IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| ANGELA LIPSCOMB, | ) |
| Plaintiff, | ) |
| v. | ) 4:23-cv-00810-LSC |
| MARTIN O'MALLEY, | ) |
| Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

**MEMORANDUM OF OPINION**

I. Introduction

The Plaintiff, Angela Lipscomb ("Lipscomb" or "Plaintiff") appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI"). (Tr. at 11–29). Lipscomb timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for judicial review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

II. Background

Lipscomb was forty-six years old when she applied for SSI benefits on February 22, 2021. (Tr. at 14). Lipscomb never completed high school but later

obtained a GED. (Tr. at 45, 258). She left her job as a poultry dressing worker, (Tr. at 83, 258), claiming she was disabled due to a variety of impairments including migraine headaches. (Tr. at 47, 257).[1] Lipscomb claims her migraine headaches began in 2003 and occur almost every week lasting from two hours to all day or longer. (Tr. at 50, 82). She considers her migraine headaches to be the most pressing reason she cannot work. (Tr. at 49). To handle her migraines, Lipscomb tries to take ibuprofen and lie down with the curtains closed. (Tr. at 51–52).

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps sequentially until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i),

---

[1] Lipscomb only seeks reversal of the ALJ's decision regarding her migraine headaches. (Doc. 10 at 17). Therefore, review is limited to Lipscomb's alleged headache disability.

416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that the plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator

must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e).

The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of her past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

On January 10, 2023, the Administrative Law Judge ("ALJ") determined that Lipscomb was not disabled under section 1614(a)(3)(A) of the Social Security Act. (Tr. at 23–24). At step one, the ALJ determined that Lipscomb had not engaged in SGA since her application for SSI. (Tr. at 16). At step two, the ALJ determined that Lipscomb has the following severe impairments under 20 C.F.R. 416.920(c): major

depressive disorder, attention deficient hyperactivity disorder, autism spectrum disorder, and anxiety disorder. (*Id.*). The ALJ determined that Lipscomb's other claimed impairments, including headaches, were not severe. (Tr. at 16–19).

At step three, the ALJ found that the combination of impairments did not meet or equal the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 19). After considering the entire record, the ALJ determined that Lipscomb had the RFC to perform medium work as defined in 20 C.F.R. § 416.967(c) except that Lipscomb cannot work around "unprotected heights or involving the operation of hazardous machinery." (Tr. at 20). The ALJ found:

> [Lipscomb] can occasionally climb stairs but never ladders, scaffolds, ropes, or ramps. [Lipscomb] can frequently stoop, crawl, crouch, and kneel. [Lipscomb] can have minimal job-related changes. [Lipscomb] is able to understand, remember, and carry out simple, routine tasks involving one or two-step instructions for two hour periods. [Lipscomb] can have no contact with the general public and occasional contact with coworkers and supervisors. [Lipscomb] can do no work requiring production goals or quotas.

(*Id.*).

At step four, the ALJ decided that Lipscomb is unable to perform any past relevant work (20 C.F.R. § 416.965). (Tr. at 23). At step five, the ALJ considered Lipscomb's age, education, and work experience and determined that Lipscomb was not disabled under Section 1614(a)(3)(A) of the Social Security Act. (Tr. at 23–

24). The Appeals Council ("AC") denied Lipscomb's request for review. (Tr. at 1).

### III.  Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*,

383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## IV. Discussion

Lipscomb alleges that the ALJ's decision should be reversed and remanded because: (1) the ALJ's decision as to her alleged migraine headaches was not supported by substantial evidence; (2) the ALJ should have recontacted physicians or ordered further examinations; and (3) the AC did not properly review new, material, and chronologically relevant evidence related to her migraine headaches. (Doc. 10 at 16–17.) For the reasons detailed below, these arguments are without merit.

### A. Substantial Evidence

Plaintiff's subjective complaints alone are insufficient to establish a disability. *See* 20 C.F.R. §§ 404.1529(a), 416.926(a); *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). The Eleventh Circuit applies a two-part pain standard when a plaintiff claims disability due to pain or other subjective symptoms. The plaintiff must show evidence of the underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged symptoms arising from the condition, or (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged symptoms. *See* 20 C.F.R. §§ 404.1529(a), (b), 416.929(a), (b); Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029; *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

If the first part of the pain standard is satisfied, the ALJ then evaluates the intensity and persistence of Plaintiff's alleged symptoms and their effect on his ability to work. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); *Wilson*, 284 F.3d at 1225–26. In evaluating the extent to which the Plaintiff's symptoms, such as pain, affect her capacity to perform basic work activities, the ALJ will consider (1) objective medical evidence, (2) the nature of Plaintiff's symptoms, (3) the Plaintiff's

daily activities, (4) precipitating and aggravating factors, (5) the effectiveness of medication, (6) treatment sought for relief of symptoms, (7) any measures the Plaintiff takes to relieve symptoms, and (8) any conflicts between a Plaintiff's statements and the rest of evidence. *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4); SSR 16-3p.

To discredit Plaintiff's statements, the ALJ must clearly "articulate explicit and adequate reasons." *See Dyer*, 395 F.3d at 1210. A credibility determination is a question of fact subject only to limited review in the courts to ensure the finding is supported by substantial evidence. *See Hand v. Heckler*, 761 F.2d 1545, 1548–49 (11th Cir. 1985), *vacated for rehearing en banc*, 774 F.2d 428 (11th Cir. 1985), *reinstated sub nom.*, *Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). "Substantial evidence is defined as more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote*, 67 F.3d at 1560 (citation omitted). Courts in the Eleventh Circuit will not disturb a clearly articulated finding supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). "The question is not . . . whether [the] ALJ could have reasonably credited [Plaintiff's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r*

*of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

      **i.**      **Primary headaches**

On August 26, 2019, the SSA issued Social Security Ruling 19-4p which explains primary headache disorders and how the SSA establishes that a person has a medically determinable impairment ("MDI") of a primary headache disorder. *See* Soc. Sec. Ruling, SSR 19-4p; Titles II & XVI: Evaluating Cases Involving Primary Headache Disorders, SSR 19-4p at 1 (S.S.A. Aug. 26, 2019). Primary headache disorders include migraine headaches. *See id* at 2. Primary headache disorders can be established as an MDI by considering objective medical evidence (signs, laboratory findings, or both) from an acceptable medical source ("AMS"). *Id* at 5.

The SSA "will not establish the existence of an MDI based only on a diagnosis or a statement of symptoms." *Id* at 6. However, the SSA considers a combination of findings from an AMS to establish a primary headache disorder. *Id.* The first inquiry is if there is a primary headache disorder diagnosis from an AMS which documents review of medical history, a physical examination, and the exclusion of alternative medical and psychiatric causes. *Id.* The treatment notes must be consistent with the diagnosis. *Id.* Second, "[a]n observation of a typical headache event, and a detailed description of the event including all associated phenomena, by an AMS." *Id.* Third*,* "[r]emarkable or unremarkable findings on laboratory tests." *Id.* Fourth,

"[r]esponse to treatment" including consideration of changes in symptoms. *Id.*

Here, the ALJ determined that Lipscomb's headaches are not medically determinable because "Social Security Ruling 19-4p requires that the primary headache disorder be diagnosed by an acceptable medical source and include a detailed description of the event, including all associated phenomena . . . ." (Tr. at 18). "[T]hough a third party observation of a headache event is acceptable when the description of the event is document[ed] by the acceptable medical source," Lipscomb's treating record did not support her allegations regarding frequency, and Lipscomb's treating record showed her headaches are managed with over-the-counter pain relievers, like ibuprofen. (*Id.*) Further, the ALJ noted that Lipscomb was never diagnosed with migraine headaches and that her most recent headaches were deemed caused by a vascular condition. (*Id.*)

In determining Lipscomb's RFC, the ALJ considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with 20 C.F.R. § 416.929 and SSR 16-3p. (Tr. at 20). The ALJ also "considered the medical opinion(s) and prior administrative medical finding(s) in accordance with" 20 C.F.R. § 416.920(c). (*Id.*) Further, the ALJ considered "the type, dosage, effectiveness, adverse side effects of any medication; as well as any treatment, other than medication, for relief of the alleged symptoms and any measures used to relieve

pain or other symptoms." (Tr. at 22). The ALJ considered Lipscomb's "daily activities and any other factors concerning [her] functional limitations and restrictions due to pain or other symptoms which have not previously been considered." (*Id.*) The symptoms considered included "severe headaches" and the opinions and findings included those from Ms. Holden, Dr. Scott Duncan, Dr. June Nichols, Dr. Phillip Matar, Dr. Victoria Hogan, Dr. Amy Cooper, and Dr. Virginia Bare. (Tr. at 20–23). Thus, the ALJ considered a variety of factors to support his conclusion, including objective medical evidence and Lipscomb's subjective complaints. (Tr. at 20–22).

      The ALJ discussed Lipscomb's allegations concerning her ability to work due to severe headaches but explained that her description of impairments "are not entirely consistent given her medical history, reports from examining practitioners, clinical findings on examination and admitted activities of daily living." (Tr. at 21). The ALJ highlighted that Lipscomb was noted to be "malingering and 'making up her symptoms' when questioned by her primary care provider (Exhibit B2F)." (Tr. at 21). Moreover, the ALJ referenced Lipscomb's evaluation from Dr. Scott Duncan which noted that Lipscomb appeared to be exaggerating her issues. (Tr. at 21). Considering all of Lipscomb's medical opinions and prior administrative medical findings, the ALJ determined that "nothing in the record precludes [Lipscomb] from performing work consistent with her assigned residual functional capacity." Tr. at

22–23). The credibility determinations made by the ALJ are therefore supported by substantial evidence.

### B. Duty to recontact physicians or order further examinations

Lipscomb argues that the "ALJ should have re-contacted [Lipscomb's] physicians or ordered a further consultative examination if he needed to more clearly ascertain the cause or severity of [Lipscomb's] alleged migraine headaches." (Doc. 10 at 14–15). But the ALJ never expressed that the record was insufficient. The ALJ is not required to recontact physicians or order more examinations if the record is sufficient. 20 C.F.R. § 416.920b(a); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007) ("The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision."). Because there was substantial evidence for the ALJ's determination regarding Lipscomb's headaches, the ALJ was not required to recontact physicians or order further examinations.

### C. New, Material, and Chronologically Relevant Evidence

Lipscomb also alleges that the AC erred in denying review because it did not properly consider new, material, and chronologically relevant evidence concerning her headaches. (Doc. 10 at 16). In support of this contention, Lipscomb cites

*Ingram v. Comm'r of Soc. Sec. Admin.*, which states that "[t]he Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" 496 F.3d 1253, 1261 (quoting 20 C.F.R. § 404.907(b)). As current, 20 C.F.R. § 404.970 mandates the AC grant review of a case if it receives "additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5).

Lipscomb submits that Dr. Herrera's February 13, 2023 medical report from Quality of Life "could be considered 'new' in that it seems to use the words 'vascular' and 'migraine' interchangeably to describe her chronic headaches." (Doc. 10 at 17). Lipscomb argues that the report is material because "if [her] headaches are in fact migraines there is a reasonable probability that this could have changed the outcome of the ALJ's decision." (*Id.* at 17). Lipscomb contends there is "no lack of good cause" for failure to submit the evidence sooner because the record confirms that Lipscomb has continued seeking treatment for "migraines." (*Id.* at 17).

To start, the AC noted the February 13, 2023 medical report as "additional evidence." (Tr. at 2). But the AC determined that the medical report from February

13, 2023 "does not relate to the period at issue." (*Id.*) The AC explained that this February 13, 2023 medical report did not affect the decision about whether Lipscomb was disabled on or before January 10, 2023. (*Id.*) Thus, the AC declined to consider this new medical record because it was not chronologically relevant. "The Appeals Council was not required to give a more detailed explanation or to address each piece of new evidence individually." *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309 (11th Cir. 2018).

"[M]edical opinions based on treatment occurring after the date of the ALJ's decision may be chronologically relevant." *Washington v. Soc. Sec. Admin., Com'r*, 806 F.3d 1317, 1322 (11th Cir. 2015). But chronologically relevant evidence must also be material to require review. 20 C.F.R. § 404.970(a)(5); *Hargress*, 883 F.3d at 1310 ("Even if the [evidence] could be considered chronologically relevant, it was not material evidence because there is no reasonable possibility that the new evidence would change the administrative result.").

Here, the February 13, 2023 report was not material evidence because there is no reasonable probability that the evidence would change the result. The SSA "will not establish the existence of an MDI based only on a diagnosis or a statement of symptoms." Soc. Sec. Ruling, SSR 19-4p at 6. Moreover, Dr. Herrera's February 13, 2023 report diagnosed Lipscomb with vascular headaches. (Tr. at 32). Although this

new evidence does give a "diagnosis" of vascular headaches, it also supported findings already in the record that the headaches are controlled with over-the-counter medication. (Tr. at 32). Further, it still does not provide a "detailed description of the event including all associated phenomena." *See* SSR 19-4p. Therefore, even if the February 13, 2023 report was chronologically relevant, there is no reasonable probability it changes the outcome and the report is not material. *See* 20 C.F.R. § 404.970(a)(5).

For the reasons detailed above, this Court finds that the Appeals Council was not required to grant review based on the February 13, 2023 report.

## V. Conclusion

Upon review of the administrative record and arguments, this Court finds the Commissioner's decision is supported by substantial evidence and is **AFFIRMED**. A separate order consistent with this opinion will be entered.

**DONE** and **ORDERED** on April 9, 2024.

L. Scott Coogler
United States District Judge

215708